IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Robert M.,[1]

    Plaintiff,

v.

**NANCY A. BERRYHILL**,
Acting Commissioner of Social Security,

    Defendant.

Civ. No. 6:18-cv-00559-MC

**OPINION AND ORDER**

**MCSHANE, Judge**:

Plaintiff Robert M. brings this action for judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI") under Title II of the Social Security Act. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

The issues before this Court are whether the Administrative Law Judge ("ALJ") erred in rejecting: (1) Dr. Scott Alvord's, PsyD, medical opinion; (2) Felice Nirenstein-Rich's, M.S., Q.M.H.P., "other" medical source statement; and (3) Plaintiff's subjective symptom testimony. Because there is substantial evidence in the record to support the ALJ's findings and errors, if any, were harmless, the Commissioner's decision is AFFIRMED.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case and any immediate family members of that party.

1 – OPINION AND ORDER

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff applied for SSI on December 27, 2013, alleging disability since August 1, 2005. Tr. 167–72.[2] His claim was denied initially and upon reconsideration. Tr. 106–09, 117–22. Plaintiff timely requested a hearing before an ALJ and appeared before the Honorable Mark Triplett on December 12, 2016. Tr. 120–22, 39–76. ALJ Triplett denied Plaintiff's claim by a written decision dated February 15, 2017. Tr. 15–38. Plaintiff sought review from the Appeals Council and was denied on January 29, 2018 rendering the ALJ's decision final. Tr. 162–64, 1–6. Plaintiff now seeks judicial review of the ALJ's decision.

Plaintiff was 42 years old at the time of his alleged disability onset and 45 at the time of his hearing. *See* tr. 167. Plaintiff has a GED and worked as a pizza delivery driver, tow truck driver, wrecking yard dismantler/salvager, delivery driver, and gas station/fuel attendant. Tr. 31, 48, 51, 203, 601. Plaintiff alleges disability due to shoulder, knee, heart, and kidney problems, attention-deficit/hyperactivity disorder ("ADHD"), post-traumatic stress disorder ("PTSD"), depression, and bipolar disorder. Tr. 44–46, 98, 167–72, 201.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978,

---

[2] "Tr." refers to the Transcript of Social Security Administrative Record, ECF No. 9, provided by the Commissioner.

980 (9th Cir. 1997)). To determine whether substantial evidence exists, the court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989) (citing *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986)). "'If the evidence can reasonably support either affirming or reversing,' the reviewing court 'may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1996)).

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2012). The burden of proof rests on the claimant for steps one through four, and on the Commissioner for step five. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). At step five, the Commissioner's burden is to demonstrate that the claimant can make an adjustment to other work existing in significant numbers in the national economy after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is considered disabled. *Id.*

### I. Dr. Alvord's Medical Opinion

The State of Oregon Disability Determination Services referred Plaintiff to Dr. Scott Alvord, PsyD, to address his ADHD, PTSD, depression, and bipolar disorder and the impact of related symptoms on his employability. Tr. 600. The ALJ gave significant weight to Dr. Alvord's opinion that Plaintiff could understand and follow simple instructions but was markedly limited

with more complex tasks. Tr. 29. The ALJ gave little weight to Dr. Alvord's opinion that Plaintiff had many marked limitations regarding social functioning. *Id.*

"To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* When evaluating conflicting medical opinions, an ALJ need not accept a brief, conclusory, or inadequately supported opinion. *Id.*

Here, Dr. Alvord opined that Plaintiff was markedly restricted in his ability to interact appropriately with the public, supervisors, and coworkers and respond appropriately to work situations and changes in a routine work setting. Tr. 606. Dr. Alvord's opinion is contradicted by that of state agency psychological consultants Alvin Smith, Ph.D., and Dorothy Anderson, Ph.D. *See* tr. 103, 88 (opining that Plaintiff was capable of occasional indirect interaction with the public and coworkers and could frequently work independently). Therefore, the ALJ needed only provide specific and legitimate reasons supported by substantial evidence to properly reject Dr. Kerner's opinion. *See Bayliss*, 427 F.3d at 1216 (citation omitted). The ALJ did so here.

An ALJ must weigh the following factors when considering medical opinions: (1) whether the source has an examining relationship with claimant; (2) whether the source has a treatment relationship with claimant; (3) supportability (as shown by relevant evidence and explanation); (4) consistency with the record as a whole; (5) specialization; and (6) other factors,

including the source's familiarity with other information in the record. 20 C.F.R. § 404.1527(c)(1)–(6).

Dr. Alvord examined Plaintiff once and has no treatment relationship with him. *See* tr. 600. The ALJ found that Dr. Alvord's opinion that Plaintiff had many marked limitations regarding social functioning was inconsistent with several of Dr. Alvord's findings that Plaintiff was pleasant and cooperative, had a long-term relationship, made an ongoing effort to obtain custody of his children, and performed odd jobs. Tr. 29. The ALJ concluded that the evidence of record—some of which was not available to Dr. Alvord[3]— showed that Plaintiff had only moderate limitations in social functioning. *Id.* Plaintiff argues that the record as a whole shows that his anger outbursts have negatively impacted his relationships and led to his termination from work. Pl.'s Br. 8, ECF No. 13. Plaintiff also argues that the ALJ failed to explain how his familial relationships demonstrate an ability to appropriately interact with coworkers, supervisors, and the public. *Id.*

Consistent with the ALJ's findings, Dr. Alvord said that Plaintiff was pleasant, cooperative, and adequately groomed. Tr. 602. He lived with his son, girlfriend, and "a couple of roommates." Tr. 46, 601–02. The Ninth Circuit has held that presenting as engaging and cooperative, being adequately groomed and punctual, and maintaining friendships tends to undermine claims of marked social limitations. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999).

---

[3] Dr. Alvord only had access to Plaintiff's mental health therapy notes from October 6, 2014 to January 28, 2015. Tr. 600.

Plaintiff said he had problems getting along with others and had been fired from his pizza delivery job due to "an outburst with the owner's brother.". Tr. 226, 75. This appears to be the only instance in which his anger issues interfered with his job performance. From March 5, 2015 to January 13, 2016, Plaintiff was doing odd jobs, such as making a coffin at his landlord's request in exchange for rent. Tr. 521, 523, 528, 549, 58–59, 63. He also was fixing up his living space. Tr. 539. Plaintiff's independent work and self-motivation is evidence that his mental impairments do not prevent him from working. *See Morgan*, 169 F.3d at 602 (noting that the claimant maintained a garden and assisted with restoring a house).

The ALJ offered specific and legitimate reasons supported by substantial evidence for giving Dr. Alvord's opinion little weight.

## II. Ms. Nirenstein-Rich's Opinion

Felice Nirenstein-Rich, M.S., Q.M.H.P., is Plaintiff's treating counselor and has regularly met with him since December 2013. Tr. 30, 417–18. In her December 6, 2016 function report, she indicated that Plaintiff had multiple ongoing symptoms stemming from his ADHD, PTSD, and bipolar disorder. These symptoms include depressed and anxious moods, anger and agitation, desire to withdraw and avoid, lack of motivation and concentration, panic attacks, low self-esteem, and suicidal thoughts with a history of suicide attempts. Tr. 579–80. His difficulty controlling his thoughts and feelings could create problems with coworkers and supervisors. Tr. 580. He had difficulty receiving even constructive criticism due to his past trauma. *Id.* He would have trouble concentrating on complex tasks. *Id.* He became so easily frustrated that he feared he could not trust himself or others and would "blow up." *Id.* He became paranoid and anxious

when anticipating having to be somewhere for hours at a time due to difficulty concentrating and focusing, which causes him to quit tasks. *Id.* He also had poor memory issues. *Id.*

Ms. Nirenstein-Rich rated some of Plaintiff's abilities as moderately limited and others as markedly limited. *See* tr. 581–83. For example, she said that Plaintiff was markedly limited in his ability to carry out very short and simple or detailed instructions, maintain regular attendance, be punctual, sustain an ordinary routine without special supervision, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and set realistic goals or make plans independently of others. *Id.*

The Social Security Administration regulations differentiate between "acceptable medical sources" and "nonmedical sources." 20 C.F.R. §§ 404.1502(a) and (e), 416.902(i) and (j) (2017). Social welfare personnel are "nonmedical sources." 20 C.F.R. §404.1502(e)(3). An ALJ may reject opinions from "other" sources if the ALJ provides germane reasons for doing so. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citations omitted).[4]

Here, the ALJ gave partial weight to Ms. Nirenstein-Rich's opinion that Plaintiff's symptoms would affect his ability to interact with others in the workplace. Tr. 30. The ALJ found that Plaintiff "has some limitations due to his mental conditions," which he incorporated into his RFC finding. *Id.* However, the ALJ gave little weight to Ms. Nirenstein-Rich's opinion that Plaintiff had marked limitations in functioning. *Id.* The ALJ provided five germane reasons.

---

[4] The regulations previously categorized sources as "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513(a) and (d) (current through March 27, 2017) (current version at 20 C.F.R. § 404.1513 (2017)). Accordingly, Ninth Circuit case law refers to "other sources."

7 – OPINION AND ORDER

First, the ALJ found that Plaintiff's ability to care for his children and maintain a relationship was inconsistent with Ms. Nirenstein-Rich's opinion. Tr. 30. As with Dr. Alvord's opinion above, Plaintiff's pleasant and cooperative demeanor and ability to care for his child, maintain a relationship, live with roommates, and perform odd jobs undermines Ms. Nirenstein-Rich's opinion. *See Morgan*, 169 F.3d at 601–02. He even helped his partner through her cancer battle and, although he was "angry with the system," was a "great advocate" for her. Tr. 504, 505. Plaintiff maintains that he "had been terminated from past work attempts due to anger outbursts" and has difficulty getting along with authority figures. Pl.'s Br. 11; *see* tr. 226, 75. He mischaracterizes the extent of his termination from past jobs. As explained above, there was only one instance where he was fired due to an anger outburst. *See* tr. 226, 75.

Second, the ALJ found that the treatment records primarily discussed Plaintiff's custody issues and related stressors. Tr. 30; *see* tr. 514, 520–21, 523, 526, 529–34, 536, 540, 549–51, 560. Plaintiff argues that the ALJ erred in dismissing his waxing and waning mental symptoms as situational given his diagnoses. Pl.'s Br. 11. This Court agrees with Defendant that it "[does] not appear that these situational difficulties reflect[] long-term levels of mental impairment." *See* Def.'s Br. 6, ECF No. 17. His situation-focused treatment records do not support Ms. Nirenstein-Rich's account of extensive ongoing limitations despite his diagnoses.

Third, the ALJ found that Plaintiff's normal mental status examinations and lack of medication were inconsistent with Ms. Nirenstein-Rich's opinion. *See* tr. 30, 498–566. From February 20, 2015 to November 14, 2016, Plaintiff reported that he was feeling somewhat less depressed, was uninterested in taking medication, had been learning to deal with his symptoms more effectively, noticed some positive changes regarding his productivity and ability to limit his

reactions to things, was feeling much better, was making an effort to convey his feelings more sensitively, was feeling hopeful and positive, and had made some progress regarding depressive mood, frustration, anger, and being easily triggered. Tr. 511, 514, 535, 543, 547, 560. Additionally, a February 20, 2015 mental status evaluation revealed depressed and irritable mood and angry and sad affect, but no areas of immediate concern, normal personal hygiene and manner of dress, pleasant and cooperative behavior, no memory impairment, and normal thought process, insight, and judgment. Tr. 556.

Fourth, the ALJ addressed long gaps in the treatment records. Tr. 30. As of June 2, 2016, Ms. Nirenstein-Rich hadn't heard from Plaintiff in several months. Tr. 505. He called her on October 28, 2016 after a "long absence." Tr. 500. Defendant argues that this was a reasonable factor for the ALJ to consider because "an ALJ may consider a claimant's failure to seek mental health treatment unless 'the record affords compelling reasons' to believe that failure resulted from the claimant's mental illness." Def.'s Br. 10 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1018 n.24 (9th Cir. 2014)). Plaintiff argues that he received treatment once per month from December 2013 through February 2016. Pl.'s Br. 11–12; *see* tr. 370–561. He experienced heightened symptoms in February 2016 but did not return to therapy until October 2016 because he was busy, mostly due to his partner's cancer treatment. Pl.'s Br. 12; *see* tr. 502, 504, 505. Helping one's live-in partner fight cancer is a compelling reason for failing to seek mental health treatment. However, this error is harmless because the ALJ had other specific and legitimate reasons supported by substantial evidence to reject Ms. Nirenstein-Rich's opinion. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (holding that an error is harmless if it is "inconsequential to the ultimate nondisability determination.").

9 – OPINION AND ORDER

Finally, the ALJ found that Plaintiff's ability to care for his ill partner, work with Vocational Rehabilitation, and perform odd jobs was inconsistent with Ms. Nirenstein-Rich's opinion. Tr. 30. Notably, he pursued Vocational Rehabilitation training as required to continue receiving his Temporary Assistance for Needy Families benefits. Tr. 277, 284, 504. Although he was released on September 14, 2016 because he submitted a statement from his doctor saying that he was not medically released to participate, he did not submit the statement for the record. Tr. 271, 277, 31. Vocational Rehabilitation said that he did not report any employment goals and was focused on receiving SSI benefits. Tr. 277. Further, he did not update his legal documentation despite requests that he do so. Tr. 278, 287.

The ALJ provided germane reasons for rejecting Ms. Nirenstein-Rich's opinion.

### III. Plaintiff's Credibility

An ALJ must consider a claimant's symptom testimony, including statements regarding pain and workplace limitations. *See* 20 CFR §§ 404.1529(a), 416.929(a). Where there is objective medical evidence in the record of an underlying impairment that could reasonably be expected to produce the pain or symptoms alleged and there is no affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of her symptoms. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina*, 674 F.3d at 1112 (quoting *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)). The ALJ "may consider a range of factors in assessing credibility." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th

Cir. 2014). These factors can include "ordinary techniques of credibility evaluation," *id.*, as well as:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter,* 504 F.3d at 1040. "If the ALJ's credibility finding is supported by substantial evidence in the record," this Court "may not engage in second-guessing," *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted), and "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation," *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995) (citation omitted).

Here, the ALJ found that Plaintiffs "statements concerning the intensity, persistence, and limiting effects of [his] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." Tr. 26. Plaintiff said that he was unable to work due to shoulder, heart, and kidney problems, ADHD, PTSD, depression, bipolar, and knee injury. Tr. 201. He has had constant chronic shoulder pain for the past year. Tr. 210. His beta blocker frequently drops his blood pressure, and his heart surgery minimized but did not cure the problem. *Id.* His kidney leaks protein, which makes him feel tired, weak, dizzy and lightheaded. *Id.*

Plaintiff testified that his heart issue was the main thing preventing him from working. Tr. 54. His heart raced for a couple of seconds to half an hour. *Id.* Depending on the severity, he would feel tired, weak, and short of breath. *Id.* He recently had a heart procedure, but it did not help his symptoms. Tr. 64. His heart raced several times per day, and though most episodes were relatively minor, he had a sizeable episode at least four or five times per week. *Id.* His beta

blockers dropped his blood pressure so low that it made him feel worse than his heart racing issues. Tr. 55. He had no energy and could not function. *Id.* He had not ridden his bicycle in two years due to leg weakness. Tr. 55–56. His doctor, neurologist, and cardiologist had conflicting opinions about the cause of his leg weakness. Tr. 60–61. He also had intermittent right shoulder pain lasting for months at a time, during which he could not lift his arm above chest level. Tr. 60–62. The last time it hurt badly was three months prior, when it lasted for one to one-and-a-half weeks. *Id.* He originally started seeing his therapist because of his marriage issues. Tr. 56–57. His PTSD causes anger outbursts and he has always had trouble focusing on things. Tr. 58. He would occasionally do an odd job, such as building a coffin. Tr. 58–59. His landlord tried to give him things to do to help with his rent. Tr. 59. He also purchased a hauling trailer to take trash to the dump and hoped to use it for a future job if possible. Tr. 60.

The ALJ found that Plaintiff's claims of debilitated functioning were inconsistent with his actual functioning. Tr. 26. For example, Plaintiff drove, performed household chores, helped pay bills, shopped, and worked on cars. Tr. 338–39. In January 2014 he was looking for side work, and in June 2014 he said there was not enough work to keep him occupied. Tr. 413, 397. He continued to look for odd jobs in July 2014. Tr. 393. Plaintiff argues that none of these activities indicate a higher level of functioning than he reported, particularly regarding social functioning. Pl.'s Br. 15–16. A claimant's daily activities may be grounds for an adverse credibility finding if he "is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (quoting *Fair*, 885 F.2d at 603); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). "Even where those activities suggest some

difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113 (citing *Turner v. Comm'r of Sec. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010)). Here, Plaintiff's daily activities and odd jobs contradict his claims that he was unable to work due to his heart racing, had constant chronic shoulder pain, had no energy, and could not function. *See* tr. 201, 210, 55. Plaintiff's social functioning is discussed in more detail below.

The ALJ found that the medical evidence of record shows some basis for Plaintiff's pain. Tr. 26. Despite Plaintiff's reports of shoulder pain and right arm numbness and tingling, however, examinations revealed no significant findings or neurological deficits. *See* tr. 352, 450. Further, he did not complain of much neck pain. Tr. 351, 361. Cervical spine x-rays showed some mild bony impingement at C4-C5 and C5-C6 and severe right neural foraminal stenosis at C5-C6, but no severe disc space narrowing. Tr. 348, 452. Upon visiting a neurosurgeon in May 2014, Plaintiff was not convinced that he needed surgery. Tr. 447. He was taking gabapentin as needed and said that it helped. *Id.* In November 2014, he had stable and tandem gait, could walk on his toes and heels, and could squat at 90 degrees. Tr. 340. He had good range of spinal motion, negative straight leg raise tests, 5/5 strength in all extremities, intact sensation, and normal grip, grasp, manipulation, sensation, and wrist and thumb range of motion. Tr. 340–42. He also did not complain of any difficulty using his hands and had normal muscle tone. *Id.*

Plaintiff had not been diagnosed with a shoulder impairment, but the ALJ acknowledged that his shoulder pain could be related to his severe cervical condition. Tr. 27. The ALJ found, however, that examinations showed no neurological deficits and intact strength. Tr. 361. He also reported playing in the yard, looking for chicken eggs, going for rides, and riding in his

lawnmower. Tr. 515. The ALJ also found that the objective medical evidence of record showed "no acute or disabling spinal condition." Tr. 28. Plaintiff reported that his arm pain disappeared after he underwent neck surgery in 2015. Tr. 485. Imaging showed thoracic spine abnormalities and he had tenderness on examination, but no neurological deficits. Tr. 485–86. He had right C6 radiculopathy in March 2016 but was neurologically intact, and his waxing and waning symptoms were managed conservatively. Tr. 470. His neurologist advised him that he could return to neurology as needed. *Id.* Additionally, he testified that his arm had not bothered him for about three months. Tr. 62.

Regarding lower extremity weakness, the ALJ found that the objective medical evidence of record was consistent with limiting Plaintiff to medium exertion work with a sit/stand option. Tr. 28. All objective tests were negative, and he had no medically determinable impairment. *Id.*; *see* tr. 472, 475, 484. He had 5/5 strength and full range of motion on examination. Tr. 491. An MRI of his lumbar spine in 2016 showed only minimal facet degenerative changes. Tr. 472. He was neurologically intact and non-focal, and there were no objective findings. Tr. 471.

Lastly, the ALJ accepted Plaintiff's mental health conditions but found that the objective medical evidence of record was inconsistent with the degree of limitation he alleged. Tr. 28. In February 2013, he was struggling with his family situation but reported many positive changes in his life and sought counseling services and medication for reinforcement. Tr. 433. Although he appeared slightly nervous, his attention and concentration were normal and his examination was largely unremarkable. Tr. 438. He also interacted kindly with another man in the lobby. *Id.* He mostly discussed his family and custody issues during therapy, and while he reported anger and depression, he was fully oriented and able to interact appropriately with his therapists. Tr. 28; *see*

tr. 370–445. Plaintiff again argues that the ALJ erred in focusing on familial stressors and dismissing his waxing and waning symptoms as merely situational given his diagnoses. Pl.'s Br. 16. An ALJ may reasonably consider records in which no symptoms were noted and discount a claimant's testimony as to the degree of his or her impairment based on evidence that significant situational stressors were involved. *Brandy B. v. Berryhill*, No. C18-5020-MAT, 2018 WL 6042316, at *8 (W.D. Wash. Nov. 19, 2018). As with Ms. Nirenstein-Rich's opinion above, it "[does] not appear that these situational difficulties reflect[] long-term levels of mental impairment." *See* Def.'s Br. 6. Plaintiff's situation-focused treatment records do not comport with his claims of extensive ongoing limitations, despite his diagnoses.

Further, Plaintiff's February 2014 mental status examination was normal, and he said he wanted to go back to school. Tr. 408, 407. He is a single parent of four managing his relationships with his partner and ex-wife. *See* tr. 99, 399. His custody battle caused him stress, but he nonetheless completed drug treatment, parent training, and urine analyses. Tr. 408, 507. Although he testified that he had significant mental health symptoms, many of his examinations lacked significant findings. Tr. 29; *see* tr. 324, 339, 342, 354, 358, 361, 482, 484, 489, 469. Additionally, he did not like being in public but shopped once a month, enjoyed a holiday barbeque, went to a casino on rare occasion, and did odd jobs. Tr. 515–16, 535, 521, 523, 528, 549. He also fixed up his living space and spent time outside. Tr. 539. The ALJ concluded that Plaintiff is cognitively intact with at least some social functioning skills. Tr. 29.

Substantial evidence exists in the record to support the ALJ's finding that Plaintiff was not entirely credible. Therefore, the ALJ did not err in discounting Plaintiff's credibility. Because

the ALJ's errors, if any, were harmless, this Court does not reach Plaintiff's credit-as-true arguments.

## **CONCLUSION**

For these reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

DATED this __25th__ day of July, 2019.

s/ Michael J. McShane
Michael J. McShane
United States District Judge